UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH EISWERTH JR., <br><br> Plaintiff, <br> v. <br><br> LACKAWANNA COUNTY SHERIFF'S DEPARTMENT, et al., <br><br> Defendants. | CIVIL ACTION NO. 3:24-CV-01214 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendants Lackawanna County ("the County") and Lackawanna County Sheriff's Department ("Sheriff's Department") (collectively, "County Defendants") on July 29, 2024. (Doc. 3). On June 28, 2024, Plaintiff Kenneth Eiswerth Jr. ("Eiswerth") commenced this action by filing a complaint against County Defendants and John P. Ehnot ("Ehnot") (collectively, "Defendants") in the Lackawanna Court of Common Pleas for violations of the Fourth and Fourteenth Amendments, 42 U.S.C § 1985, and 42 U.S.C § 1983, based upon alleged discrimination and excessive force civil rights claims. (Doc. 1-3). On July 22, 2024, County Defendants removed this action to the United States District Court for the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1446. (Doc. 1).

I. **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from Eiswerth's complaint. (Doc. 1-3, at 5-29). On or about March 11, 2023, Scranton police arrested Eiswerth for public intoxication and placed Eiswerth in a holding cell in downtown Scranton. (Doc. 1-3, ¶ 8). While Eiswerth was in the holding cell, Ehnot, who was at the time employed as a sheriff at the Scranton office of the Lackawanna County Sheriff's Department, entered the holding cell and began verbally, and

eventually physically, assaulting Eiswerth based on Eiswerth's sexuality. (Doc. 1-3, ¶¶ 6, 9). Eiswerth avers that Ehnot was unprovoked when this occurred. (Doc. 1-3, ¶ 9). After assaulting Eiswerth, Ehnot left the cell. (Doc. 1-3, ¶ 10). Shortly thereafter, Eiswerth was released both from the holding cell and the custody of the Sheriff's Department. (Doc. 1-3, ¶¶ 10-11). Eiswerth alleges that his release was predicated upon Defendants' knowledge that Ehnot's actions were "wrong and illegal." (Doc. 1-3, ¶¶ 10-11). Eiswerth further submits that "Ehnot has a history of excessive force and assault and battery known to all Defendants." (Doc. 1-3, ¶ 12).

Eiswerth sets forth seventeen causes of action in his complaint. (Doc. 1-3, at 7-28). Eiswerth asserts Counts I through VI against the County, including claims of sexual orientation discrimination (Count I); violations of the Equal Protection Clause (Count II); conspiracy (Count III); failure to train (Count IV); excessive force *Monell* claim (Count V); and assault/battery (Count VI). (Doc. 1-3, at 7-15). Eiswerth asserts identical causes of action in Counts VII through XII against the Sheriff's Department. (Doc. 1-3, at 16-24). In Counts XIII through XVII, Eiswerth asserts claims against Ehnot, including claims of sexual orientation discrimination (Count XIII); violations of the Equal Protection Clause (Count XIV); conspiracy (Count XV); intentional infliction of emotional distress (Count XVI); and assault/battery (Count XVII). (Doc. 1-3, at 24-28). As relief, Eiswerth seeks an award of monetary damages. (Doc, 1-3, at 28).

On July 29, 2024, County Defendants filed a motion to dismiss. (Doc. 3). On August 12, 2024, County Defendants filed a brief in support of their motion. (Doc. 4). On September 6, 2024, Eiswerth filed a brief in opposition, incorrectly labeled as a reply brief. (Doc. 5). On September 9, 2024, Eiswerth refiled his brief in opposition, correctly labeled as such. (Doc. 6-

2). On September 19, 2024, County Defendants filed a reply brief. (Doc. 8). County Defendants' motion to dismiss has been fully briefed and is now ripe for disposition. (Doc. 3; Doc. 4; Doc. 6; Doc. 6-2; Doc. 8).

## II. LEGAL STANDARDS

### A. MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . ."

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B.  42 U.S.C. Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

III. **DISCUSSION**

County Defendants move to dismiss the Complaint, setting forth a multitude of reasons as to why the complaint fails to state a claim upon which relief may be granted. (Doc. 4). County Defendants first argue, as a threshold matter, that all claims in Counts VII – XII should be dismissed because the Sheriff's Department is not a proper defendant.[1] (Doc. 4, at 5-6). County Defendants next contend that Counts XIII – XVII asserted against Mr. Ehnot in his official capacity are redundant to the claims asserted against the County and should thus be dismissed. (Doc. 4, at 6-7). Finally, County Defendants submit that Eiswerth has failed to state a claim against the County in Counts I – VI because Eiswerth does not allege facts that support an equal protection claim, a conspiracy claim, or an excessive force claim based upon

---

[1] Eiswerth does not object to the dismissal of all claims against the Sheriff's Department, as Eiswerth concedes that the Sheriff's Department and the County are a single entity. (Doc. 6-2, at 4). Accordingly, Counts VII – XII are **DISMISSED with prejudice**. (Doc. 1-3, at 16-24). The Sheriff's Department is **DISMISSED** from this action.

5

a police or custom theory of liability. (Doc. 4, at 7-21). Eiswerth responds that his claims against Ehnot are not redundant and that he has alleged facts sufficient to support his claims against the County. (Doc. 6-2, at 4-15).

    A.    CLAIMS ASSERTED AGAINST THE COUNTY (COUNTS I – VI)

    **1. Sexual Orientation Discrimination (Count I)**

In Count I of the complaint, Eiswerth asserts a claim for "sexual orientation discrimination." (Doc. 1-3, at 7). County Defendants correctly point out that Eiswerth fails to identify the statute or Constitutional provision he aims to proceed under as a cause of action for Count I. (Doc. 4, at 7-9; Doc. 1-3, at 7). County Defendants further contend that Count I should be dismissed, as a sexual orientation discrimination claim is only cognizable through the Equal Protection Clause, or in the employment context, through Title VII. (Doc. 4, at 7-8). Eiswerth responds that Count I is a supervisory liability claim for sexual orientation discrimination, and without citing any caselaw, argues that "Eiswerth's sexual orientation claim is not only cognizable through the Equal Protection Clause." (Doc. 6-2, at 6).

First and foremost, the Court agrees with County Defendants that Eiswerth has not adequately identified the statutory or Constitutional source of its claim in Count I. (Doc. 1-3, at 7). Second, Title VII cannot be the source of the right at stake because this case is not an employment matter and Title VII is inapplicable. *See Benoit v. State*, No. CIV. A. 94-6951, 1995 WL 170031, at *1 (E.D. Pa. Apr. 10, 1995) (dismissing Title VII claim, as "Eiswerth has neither alleged the existence of an employment relationship with the defendants nor has she followed the procedures outlined in Title VII for bringing such a claim."); 42 U.S.C. § 2000e et seq. Further, this Court, like County Defendants, was also unable to verify a source outside of Title VII or the Equal Protection Clause for Eiswerth's sexual orientation

6

discrimination charge. *See Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524 (3d Cir. 2011) (analyzing intentional discrimination outside of the Title VII employment context under the Equal Protection Clause); *Pinkney v. Meadville, Pennsylvania*, No. 1:19-CV-00167, 2021 WL 37664 (W.D. Pa. Jan. 5, 2021) (identifying no source for a non-employment based discrimination claim outside of Title VI, which is applicable in race discrimination cases only, and the Equal Protection Clause). Thus, having found no source for Eiswerth's discrimination claim outside of the Equal Protection Clause, Count I is repetitive of Eiswerth's Equal Protection claim in Count II. (Doc. 1-3, at 7-8). Third, Eiswerth's argument that Count I is a supervisory liability claim also fails. A claim for supervisory municipal liability must be predicated on an underlying Constitutional violation. *See Leonard v. City of Pittsburgh*, No. 2:13-CV-455, 2013 WL 4541727, at *6 (W.D. Pa. Aug. 27, 2013), *aff'd*, 570 F. App'x 241 (3d Cir. 2014) (holding that it is well-established that a supervisory liability claim against a municipality must be based upon an underlying Constitutional tort). As discussed *infra*, Eiswerth has not alleged facts to support an Equal Protection violation and thus, a failure to supervise claim predicated on an Equal Protection claim must also fail. County Defendants' motion to dismiss Count I shall be **GRANTED**. (Doc. 3).

### 2. Equal Protection Clause Violation (Count II)

Eiswerth asserts an Equal Protection violation in Count II of the complaint. (Doc. 1-3, at 8). County Defendants submit that Eiswerth has not alleged sufficient facts to support an Equal Protection violation. (Doc. 4, at 13). Eiswerth responds that he has indeed stated an Equal Protection claim, as he argues, without citing any allegations made to support the argument, that Ehnot has a history of discriminating based upon sexuality. (Doc. 6-2, at 7).

The Equal Protection Clause of the Fourteenth Amendment prohibits state officials from exercising their discretionary authority for an intentionally discriminatory purpose. *See Johnson v. Anhorn*, 416 F. Supp. 2d 338, 375 (E.D. Pa. 2006). There are two theories by which a plaintiff may establish an equal protection claim: the traditional theory and the class-of-one theory. *Keslosky v. Borough of Old Forge*, 66 F. Supp. 3d 592, 614 (M.D. Pa. 2014). Under the traditional theory, a "plaintiff must allege: (1) that he or she is a member of a protected class; and (2) that the government treated similarly situated individuals outside of the protected class differently." *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 716 (M.D. Pa. 2013). Alternatively, to state a claim under the class-of-one theory, "a plaintiff must allege that: '(1) defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.'" *Reed*, 951 F. Supp. 2d at 716 (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). It is not entirely clear the theory under which Eiswerth proceeds. (Doc. 1-3, at 8).

Eiswerth has failed to state a claim under the traditional analysis. In a traditional case brought under the Equal Protection Clause, a plaintiff asserts that a defendant treated him differently from other similarly situated individuals because of his membership in an identifiable or protected class, such as race, religion, sex, or national origin. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 n. 112 (3d Cir. 2016). The Third Circuit has not explicitly held that sexual orientation constitutes a protected class under the Equal Protection Clause. *See Izzard v. Cnty. of Montgomery, Pennsylvania*, No. CV 21-418, 2021 WL 5639817, at *10 (E.D. Pa. Nov. 29, 2021) ("While race and gender are protected classes under the Equal Protection Clause, neither the Supreme Court nor the Third Circuit Court of Appeals have explicitly held sexual orientation to be a 'suspect' or 'quasi-suspect' class deserving heightened

scrutiny."). However, the Supreme Court has, on several occasions, analyzed sexual orientation under an impermissible animus standard, or rational basis review. *Izzard*, 2021 WL 5639817, at *10 (citing *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020)) (*Romer v. Evans*, 517 U.S. 620 (1996)) (citing *United States v. Windsor*, 570 U.S. 744 (2013)) (citing *Obergefell v. Hodges*, 576 U.S. 644 (2015)). Thus, "it is appropriate for this court to assume that a claim for sexual orientation discrimination sounds in the Equal Protection Clause." *Izzard*, 2021 WL 5639817, at *10 (citing *Whitewood v. Wolf*, 992 F. Supp. 2d 410, 426 (M.D. Pa. 2014) (analyzing sexual orientation as a quasi-suspect class).

If Eiswerth asserts a "traditional" Equal Protection claim, he begins to do so by alleging that he was assaulted based on his sexual orientation, a protected class. *See Mack*, 839 F.3d at 305 n.112; *see also Bostock*, 590 U.S. at 656-666. However, he does not allege any facts which show detainees or individuals of other sexual orientations were treated differently based on their sexual orientation with respect to their being detained for public intoxication or their treatment by Ehnot. (Doc. 1-3, at 6-9). While Eiswerth does allege that Ehnot had a history of excessive force, he makes no allegations regarding the identities of those individuals on whom he purportedly used excessive force. (Doc. 1-3, at 6-9). As such, Eiswerth has failed to provide particular allegations to satisfy the pleading standards of a traditional Equal Protection claim.

Eiswerth also fails to state a claim for a class-of-one Equal Protection Clause violation. "As to the first element, '[a]t the motion to dismiss stage, [the plaintiff] must allege facts sufficient to make plausible the existence of ... similarly situated parties.'" *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013) (citing *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011)). "[T]he law in the Third Circuit does not require [the plaintiff] to

9

show that the [comparators] are identical in all relevant respects but only that they are alike." *Borrell*, 955 F. Supp. 2d at 405; *see also Southersby Dev. Corp. v. Borough of Jefferson Hills*, 852 F. Supp. 2d 616, 628 (W.D. Pa. 2012) (citing *Startzell v. City of Phila, Pa*, 533 F.3d 183, 203 (3d Cir. 2008)); *Simmermon v. Gabbianelli*, 932 F. Supp. 2d 626, 632–33 (D.N.J. 2013); *Thomas v. Coopersmith*, No. 11–7578, 2012 WL 3599415, at *5 (E.D. Pa. Aug. 21, 2012). Eiswerth has failed to allege how he was treated differently from others similarly situated to him. *See Reed*, 951 F. Supp. 2d at 716. In order to demonstrate that he was treated differently than others in his situation, Eiswerth must allege that others who are similarly situated exist. *See Hill*, 455 F.3d at 239 ("[plaintiff's] claim must fail because he does not allege the existence of similarly situated individuals.").

Eiswerth argues in his brief in opposition that he was treated differently than any other intoxicated parade-goer by being unnecessarily singled out for public intoxication. (Doc. 6-2, at 6-7). However, he makes no reference to such individuals in his complaint. (Doc. 1-3, at 6-9). In the complaint, Eiswerth alleges in a vague fashion that "Ehnot, though unprovoked, went into the holding cell and began verbally assaulted Eiswerth based upon Eiswerth's sexuality and ultimately began physically assaulting Eiswerth based upon his sexuality." (Doc. 1-6, at 6). While abhorrent allegations, Eiswerth does not mention any other individual in his complaint other than Ehnot, and his statement that he was treated differently than others "is entirely conclusory absent corresponding facts to provide proper context[. . .]" (Doc. 1-3); *see Danielson v. Chester Tp.*, No. 13-5427, 2013 WL 6094578, at *6 (D.N.J. Nov. 19, 2013) (finding that a plaintiff's allegation that he "was prevented by [d]efendants from using his 3 minutes [in a council meeting] unlike others similarly situated" was too conclusory to allege discrimination as a class-of-one). Again, Eiswerth makes allegations that Ehnot had

10

a history of excessive force, but he does not provide facts alleging whether the individuals on whom he purportedly used excessive force, and those on whom he did not, were similarly situated. (Doc. 1-3, at 6-9). *Cf. Danielson v. Chester Tp.*, No. 13-5427, 2014 WL 3362435, at *6 (D.N.J. July 9, 2014) (finding that a plaintiff who alleged that he attempted to critically contribute to discussion in a council meeting and was asked to stop speaking while others who spoke during the same period and whose statements were similarly critical were not asked to stop speaking, along with allegations of prior communications between the defendants about the plaintiff had asserted sufficient facts to support an equal protection claim under a class-of-one theory at the motion to dismiss stage). Eiswerth fails to demonstrate with enough particularity that he was discriminated against as a class-of-one, as he does not sufficiently allege that he was treated differently than others who were similarly situated to him. *See Hill*, 455 F.3d at 239. Accordingly, County Defendants' motion to dismiss Eiswerth's Equal Protection claims shall be **GRANTED**. (Doc. 3).[2]

### 3. Conspiracy Claim (Count III)[3]

In Count III, Eiswerth alleges conspiracy claims. (Doc. 1-3, at 9). County Defendants argue that Eiswerth has not adequately alleged a conspiratorial agreement and thus, this claim

---

[2] As mentioned *supra*, because Eiswerth has failed to state an Equal Protection violation, to the extent that his *Monell* claims in Counts IV – VI are predicated upon an Equal Protection violation, those claims must also fail. *See Leonard*, 2013 WL 4541727, at *6 ("a *Monell* claim still must be predicated on an underlying constitutional violation"); *Ash v. Twp. of Willingboro*, No. CIV. 10-1900 RMB/JS, 2012 WL 6623986, at *4 (D.N.J. Dec. 18, 2012) (holding that municipal liability claims that sound in *Monell* require an underlying constitutional violation and finding that when no underlying violation is found, the *Monell* claim must fail).

[3] Eiswerth appears to assert its conspiracy claim in Count III under both § 1985 and § 1983. (Doc. 1-3, at 9). However, to reiterate, "[s]ection 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law

should be dismissed. (Doc. 4, at 16-17). Alternatively, County Defendants contend that Count III fails because Ehnot is an agent of the County and under the intra-corporate conspiracy doctrine, an entity cannot conspire with its agents. (Doc. 4, at 17-18). Eiswerth, in response, argues that it has alleged facts to support a conspiracy claim, but does not respond to County Defendants' intra-corporate conspiracy doctrine argument. (Doc. 6-2, at 11).

First, the doctrine that County Defendants rely upon in their motion to dismiss is the intra-corporate conspiracy doctrine. (Doc. 4, at 18). This Court recently explained that although "the United States Supreme Court has never held that the intra-corporate conspiracy doctrine does not apply to constitutional claims, the United States Court of Appeals for the Third Circuit more than four decades ago first held that such a defense does not apply to civil rights actions, particularly when an individual is not acting in his or her official capacity." *Thomas v. Duvall*, No. 3:16-CV-00451, 2019 WL 6769324, at *2 (M.D. Pa. Dec. 12, 2019). Furthermore, "'the intra-corporate conspiracy doctrine [is] inappropriate to determine at the motion to dismiss stage, as it is "a defense and requires a factual inquiry."'" *Page-Jones v. Berfield*, No. 1:20-CV-1042, 2020 WL 7480649, at *5 n.2 (M.D. Pa. Dec. 18, 2020) (quoting *Cole v. Encapera*, No. 15-104, 2015 WL 8528449, at *8 (W.D. Pa. Dec. 11, 2015)). For these reasons, County Defendants' motion to dismiss will not be granted on these grounds.

The allegations in Eiswerth's complaint, however, do not form the basis of a conspiracy claim. (Doc. 1-3). To state a cause of action under both § 1985(2) and § 1985(3), the plaintiff must adequately plead an unconstitutional conspiracy. *Bakhtiari v. Spaulding,* No. 1:17-CV-00016, 2017 WL 2778524, at *9 (M.D. Pa. June 27, 2017). "The essence of a

committed by state actors." See *Pappas*, 331 F. Supp. 2d at 315 (quoting *Gonzaga Univ.*, 536 U.S. at 284-85). Therefore, Eiswerth may only proceed under § 1985 for its conspiracy claim.

conspiracy is an agreement." *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989); *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 2015 (3d Cir. 2008) (providing that to constitute a conspiracy, there must be a meeting of the minds). Nonetheless, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly,* 550 U.S. at 556-57.

Here, even with all reasonable inferences drawn in favor of Eiswerth, his pleading a conspiracy under § 1985(2) against the County amounts to nothing more than conclusory allegations. Indeed, Eiswerth generally claims that Defendants "conspired to deprive Eiswerth of his rights[,]" and as a result, "Eiswerth suffered substantial injuries and damages." (Doc. 1-3, ¶¶ 24-25). However, "[i]t is not enough that the end result of the parties' independent conduct caused Eiswerth harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Tarapchak v. Lackawanna Cty.*, 173 F. Supp. 3d 57, 73 (M.D. Pa. 2016), *appeal dismissed* (Aug. 16, 2016), *reconsideration denied*, No. CV 15-2078, 2016 WL 9738115 (M.D. Pa. Apr. 6, 2016); s*ee also Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). ("To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'") (citing *Twombly*, 550 U.S. at 556). Additionally, Eiswerth has not articulated how Defendants conspired with one another due to a discriminatory animus. Thus, Eiswerth's § 1985(2) claims fail to state a claim for relief.

Eiswerth's cause of action against the County under § 1985(3) also fails to state a claim upon which relief can be granted. 42 U.S.C. § 1985(3) "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). Here, when liberally construed, Eiswerth appears to claim that the County and Mr. Ehnot conspired to violate her constitutional right to be free from discriminatory animus based upon his sexuality by the County's failure to put a stop to Ehnot's known misconduct. (Doc. 1-3, at 9). Specifically, Eiswerth contends that Ehnot verbally and physically assaulted Eiswerth based upon his sexual orientation. (Doc. 1-3, at 6). However, even when taken as true, this allegation is inadequate for a conspiracy claim. Notably, Eiswerth does not plead with particularity the period of the alleged conspiracy between Ehnot and the County. *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). Further, Eiswerth fails to sufficiently establish that Ehnot and the County had "a meeting of the minds" so as to facilitate or engage in the particular misconduct averred. *Startzell*, 533 F.3d 183 at 205. Accordingly, Eiswerth's complaint fails to meet the pleading standard under § 1985(3). (Doc. 1-3, at 6-9). As such, County Defendants' motion to dismiss Count III of the complaint shall be **GRANTED**. (Doc. 3; Doc. 1-3, at 9).

### 4. Policy-or-Custom *Monell* Claims Based Upon Excessive Force (Counts IV – VI)

Eiswerth asserts municipal liability claims for failure to train and failure to supervise in Counts IV – VI, predicated upon unlaw use of excessive force. (Doc. 1-3, at 9-15). County Defendants move to dismiss all claims sounding in a policy-or-custom theory of municipal liability because Eiswerth "has failed to adequately identify an unlawful policy-or-custom or a link with a County decisionmaker that resulted in use of excessive force." (Doc. 4, at 19). According to Eiswerth, Ehnot's history of excessive force and the County's failure to respond to such misconduct amounts to a policy or custom, or alternatively, a failure to train/supervise. (Doc. 6-2, at 13-15).

Municipal employers cannot be held vicariously liable for the constitutional violations committed by their employees. *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, "[m]unicipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." *Moeck v. Plesant Valley School Dist.*, 983 F.Supp.2d 516, 524 (M.D. Pa. 2013) (citing *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007)). To establish liability under *Monell*, a plaintiff must identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

A policy exists when a decisionmaker possessing final authority to establish public policy with respect to the disputed action issues an official proclamation, policy, or edict. *Natale*, 318 F.3d at 584 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). By contrast, a custom is an act that is not formally approved but is nonetheless "so widespread as to have the force of law." *Natale*, 318 F.3d at 584 (quoting *Bryan Cty.*, 520 U.S. at 404). A plaintiff may also establish municipal liability by demonstrating that a policymaker failed to take affirmative action despite an obvious need to correct the "inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights" that inaction exhibits "deliberate indifference" to the need. *Natale*, 318 F.3d at 584 (quoting *Bryan Cty.*, 520 U.S. at 417-18). Stated differently, a policy of inaction can give rise to municipal liability under § 1983 when the government's failure to act amounts to deliberate indifference towards the plaintiff's constitutional rights. However, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed

to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Brown v. City of Pittsburgh*, 586 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy"); *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 911 (3d Cir. 1984) ("A policy cannot ordinarily be inferred from a single instance of illegality...."). Thus, a showing that a well-established practice exists, and that the municipality has done nothing to end or change the practice, supports a finding of custom attributable to the municipality. In addition, a "policy may be established ... [by] a municipality's failure to train its employees." *Moeck*, 983 F.Supp.2d at 524 (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). But even in those circumstances, "[a] course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Monell*, 436 U.S. at 691-92.

Once a plaintiff identifies a municipal policy or custom, "he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)). Deliberate indifference, requires a showing that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999).

Here, Eiswerth alleges that the County "permitted, tolerated and ratified a pattern and practice of unjustified, unreasonable, use of force that was excessive." (Doc. 1-3, ¶ 38).

Eiswerth continues to make several broad allegations, including in relevant part, that the County failed to implement policies governing use of force with detainees or investigation procedures for incidents involving excessive force and that the County's policies failed to "prevent, deter, report, intervene, or take action against unlawful conduct of other officers." (Doc. 1-3, ¶¶ 38-39). Eiswerth fails to identify a written formal policy or any policymaker or final decisionmaker in his complaint to support his claim on a theory of custom liability. (Doc. 1-3). Thus, Eiswerth has not pled facts sufficient to state a municipal liability claim, as the complaint alleges only general statements relating to the County's failure to supervise and train its employees. (Doc. 1-3, at 6-15). As mentioned above, Counts IV – VI all make allegations regarding a failure to implement policies regarding proper use of force with detainees. (Doc. 1-3, ¶¶ 29-50). The allegations do not provide or point to any facts that would establish deliberate indifference, but instead makes broad, conclusory statements that simply serve to list elements of the relevant legal claim. *See Hadesty v. Rush Twp. Police Dep't*, No. 3:14-CV-2319, 2016 WL 1039063, at *13 (M.D. Pa. Mar. 15, 2016) (finding that a plaintiff failed to allege municipal liability against city and city police department). Specifically, Eiswerth does not provide any factual allegations to demonstrate that the County policymakers knew that Ehnot was likely to confront a situation like the one at issue. Eiswerth only mentions that there is a "history" of Ehnot engaging in excessive force violations of this kind in a non-specific, generalized manner, without referencing specifics of those incidences or the degree to which the County knew or responded. (Doc. 1-3, at 6).

When deciding a motion to dismiss, the Court is only bound to take into consideration factual allegations, and need not consider those that are conclusory. "[A] formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224,

231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. at 554-55). Because Eiswerth solely provided broad generalizations and sweeping conclusory statements with regard to any policy or custom theory of municipal liability in Counts IV – VI, the Court finds that he failed to provide sufficient facts to support a plausible policy or custom *Monell* claim against the County. See *Hadesty*, 2016 WL 1039063, at *13. Accordingly, County Defendants' motion to dismiss the claims in Counts IV – VI of the complaint shall be **GRANTED**.

   B. <u>Claims Asserted Against Ehnot (Counts XIII – XVII)</u>

  The Court notes that Ehnot has not moved to dismiss any claims asserted against him, specifically Counts XIII – XVII. However, both parties make arguments regarding the redundancy of claims against Ehnot in his official capacity with respect to claims against the County. (Doc. 4, at 6-7; Doc. 6-2, at 4-6). Further, "[T]he District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6)." *Gaffney v. United States*, No. 3:14-CV-00643, 2015 WL 1409674, at *6 (M.D. Pa. Mar. 26, 2015) (quoting *Bintliff–Ritchie v. Am. Reinsurance Co.*, 285 Fed. App'x 940, 943 (3d Cir. 2008); *see also Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980)). Therefore, the Court will consider the parties' arguments regarding claims asserted against Ehnot.

  In Counts XIII – XVII, Eiswerth asserts claims of sexual orientation discrimination (Count XIII); violations of the Equal Protection Clause (Count XIV); conspiracy (Count XV); intentional infliction of emotional distress (Count XVI); and assault/battery (Count XVII) against Ehnot. (Doc. 1-3, at 24-28). In the complaint, it is not clear whether Eiswerth asserts his claims against Ehnot in his individual or official capacity. (Doc. 1-3, at 24-28). In fact, the complaint makes no reference to either an individual or official capacity suit whatsoever.

(Doc. 1-3, at 24-28). However, Eiswerth argues in his brief in opposition that he has asserted claims against Ehnot in *both* capacities. (Doc. 6-2, at 4-6).

The Court agrees that any claims against Ehnot in his official capacity amount to claims against the County. Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690, n.55. In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 165-6 (1985). As such, claims against state officials in their official capacities for damages are treated as suits against the entity itself. *See Kentucky*, 473 U.S. at 166. Accordingly, Eiswerth's claims against Ehnot in his official capacity are redundant to his claims against the County. To the extent that Eiswerth intended to plead claims against Ehnot in his individual capacity, he must clearly do so in his complaint. Therefore, the claims against Ehnot are **DISMISSED without prejudice**. Eiswerth may amend his complaint to clarify his claims against Ehnot.

C.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, the Court will grant Eiswerth leave to file an amended complaint in an attempt to cure the deficiencies outlined herein with regard to all claims, excluding Counts VII – XII,

which are dismissed with prejudice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); Grayson, 293 F.3d at 108.

### IV. CONCLUSION

For the foregoing reasons, County Defendants' motion to dismiss is **GRANTED**. (Doc. 3). Counts I – VI and Counts XIII – XVII are **DISMISSED without prejudice**. (Doc. 1-3). Counts VII – XII are **DISMISSED with prejudice**. (Doc. 1-3).

An appropriate Order follows.

                                                     **BY THE COURT:**

**Dated: February 14, 2025**                      *s/ Karoline Mehalchick*
                                                      **KAROLINE MEHALCHICK**
                                                        **United States District Judge**